UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | ) |
| Plaintiff, | ) Civil Case No. 5:23-cv-01252-JG |
| v. | ) |
| JOHN DOE subscriber assigned IP Address 104.230.116.159, | ) |
| Defendant. | ) |

**MOTION FOR LEAVE TO SERVE A THIRD-PARTY**
**SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

Pursuant to Fed. R. Civ. P. 26(d)(1), and upon the attached: (1) Memorandum of Law in support of this motion; (2) Declaration of David Williamson in support of this motion; (3) Declaration of Patrick Paige in support of this motion; and (4) Declaration of Susan B. Stalzer in support of this motion, Strike 3 Holdings, LLC ("Plaintiff"), respectfully moves for entry of an order granting it leave to serve a third-party subpoena on Spectrum, prior to a Rule 26(f) conference (the "Motion"). A proposed order is attached for the Court's convenience.

/ / /


/ / /

1

Dated: 07/17/2023

                                                         Respectfully submitted,

                                                         **RIDGE LAW, LLC**

                                                         <u>By: /s/ John C. Ridge</u>
                                                         John C. Ridge (0086046)
                                                         3136 Kingsdale Center #119
                                                         Upper Arlington, Ohio 43221
                                                         Telephone: 614-561-7541
                                                         Facsimile: 614- 799-2506
                                                         E-mail: jridge@ridge-law.com
                                                         *Trial Counsel*

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion for Leave to serve a third-party subpoena prior to a rule 26(f) conference.

### I. INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff") is the owner of original, award winning motion pictures featured on its brand's subscription-based adult websites. Unfortunately, Strike 3's success has led users on the Internet to illegally infringe its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Declaration of David Williamson, ("Williamson Decl."), attached hereto as Exhibit "A."

Strike 3, using its proprietary forensic software, VXN Scan ("VXN"), monitored and detected the infringement of Strike 3's content. *See id.* at ¶ 40. VXN discovered that Defendant's IP address was illegally distributing several of Strike 3's motion pictures. *See* Declaration of Patrick Paige, attached hereto as Exhibit "B". This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity. *Id.* at ¶ 22. As a result, Plaintiff now seeks leave to serve limited, immediate discovery on Defendant's ISP, Spectrum (Spectrum) so that Plaintiff may learn Defendant's identity, investigate Defendant's role in the infringement, and effectuate service. Further impelling

3

expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time.[1]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Plaintiff will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II. FACTS

### A. Plaintiff Has a Serious Problem with BitTorrent Infringement

Strike 3 holds title to the intellectual property associated with the *Blacked*, *Blacked Raw*, *Slayed*, *Tushy*, *Tushy Raw*, and *Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. Williamson Decl. at ¶ 13. Strike 3 is owned entirely by General Media Systems ("GMS") and has existed since 2015. *Id.*

Although it started out small, the Brands' websites now host approximately 15 million visitors each month. *Id.* at ¶ 14. This success is no fluke. Strike 3's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 15–17. Moreover, Strike 3's motion pictures are known for having some of the highest production budgets of any in the adult industry. *Id.* at ¶ 19.

---

[1] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

Because of this commitment to quality, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world. *Id.* at ¶ 20. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 21. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 22. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 23.

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3, and Strike 3 "can compete in the industry, but [it] cannot compete when our content is stolen." *Id.* at ¶ 26. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 39.

### B. Plaintiff Brings Its Litigation in Good Faith

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices that people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 33. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 34. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 35.

Additionally, Strike 3 does not send demand letters. *Id.* Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding the content they choose to enjoy. Accordingly, Strike 3 has a

policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of a case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity. Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs and licenses. *Id.* at ¶ 37. Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and direct those who infringe content to the avenue of legitimately acquiring access to Strike 3's works. *Id.*

### III. STANDARD

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to any claim or defense involved in the pending action." *Malibu Media, LLC v. Doe*, No. 14-02744, 2015 WL 1291458, at *1 (N.D. Ohio Mar. 23, 2015) (citing Fed. R. Civ. P. 26(b)(1)). "The Federal Rules of Civil Procedure prohibit 'discovery from any source before the parties have conferred as required by Rule 26(f), except,' *inter alia*, when authorized by court order." *Cook Prods., LLC v. Does 1-10*, No. 16-3045, 2016 WL 10489867, at *1 (N.D. Ohio Dec. 30, 2016) (quoting Fed. R. Civ. P. 26(d)(1)); *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) ("In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for discovery is [a court order under] Rule 26(d)(1).'") (citation omitted). "Expedited discovery is appropriate upon a showing of good cause."[2] *See id.* (citing *Arista Records, LLC v. Does 1-15*, No. 07-450, 2007 WL 5254326, at *2

---

[2] As noted by Court of Appeals for the District of Columbia, the Federal Rules were amended in 2015 to remove the "good cause" standard "and replaced it with the overarching relevance and

6

(S.D. Ohio May 17, 2007)).

"Courts typically have found good cause based upon (1) allegations of copyright infringement, (2) the danger that the ISP will not preserve the information sought, (3) the narrow scope of the information sought, and (4) the conclusion that expedited discovery would substantially contribute to moving the case forward." *Voltage Pictures, LLC v. Does 1-43*, No. 13-465, 2013 WL 1874862, at *6 (N.D. Ohio May 3, 2013) (citations omitted). "Moreover, courts specifically 'allow discovery to identify Doe defendants.'" Id. (quoting *Arista Records, LLC v. Does 1–54*, No. 8-1289, 2008 WL 4104563, at *1 (E.D. Mo. Aug. 29, 2008)). "Good cause is easily established in a copyright infringement case, where, as here, plaintiff has established that it cannot meet its service obligation under Fed. R. Civ. P. 4 without the requested discovery." See *Cook Prods.*, 2016 WL 10489867 at *1 (internal citations omitted).

### IV. ARGUMENT

#### A. Plaintiff's Complaint Makes a Prima Facie Claim for Direct Copyright Infringement

To make a *prima facie* claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of

---

proportionality standard[.]" *Strike 3 Holdings*, 964 F.3d at 1207 n.2; *see also Malibu Media, LLC v. Doe*, No. 15-1342, 2015 WL 6758219, at *1 (N.D. Ohio Nov. 5, 2015) ("The scope of a subpoena is 'subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1).'") (denying motion to dismiss) (citation omitted). Nevertheless, courts "have continued to look to the good cause factors in analyzing motions for expedited discovery." *See Strike 3 Holdings, LLC v. Doe*, No. 20-5123 (KSM), 2020 WL 6342770, at *1 (E.D. Pa. Oct. 29, 2020); *Minnetonka Moccasin Co., Inc. v. Does*, No. 22-87 (PJS/TNL), 2022 WL 1055746, at *2 (D. Minn. Apr. 8, 2022) (collecting cases). Strike 3 presents the traditional good cause standard here because several of those factors address the relevance and proportionality of Plaintiff's request, and thus discovery is appropriate under either standard.

Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office. *See* 17 U.S.C. § 410(c); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 203 L. Ed. 2d 147, 139 S. Ct. 881, 888 (2019). Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, David Williamson. *See* Williamson Decl. Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan B. Stalzer, Exhibit "C."

Plaintiff has also made a plausible *prima facie* showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Defendant not only downloaded Plaintiff's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 38. Thus, "Plaintiff has plausibly alleged that Defendant copied and distributed Plaintiff's copyrighted movies without authorization." *Malibu Media, LLC v. Doe*, No. 14-383, 2014 WL 4986467, at *4 (S.D. Ohio Oct. 6, 2014) (denying motion to dismiss); *see Malibu Media, LLC v. Bowser*, No. 14-2759, 2015 WL 5854076, at *3 (N.D. Ohio Oct. 7, 2015) (denying motion for judgement on the pleadings).

**B.   There is a Real Risk the ISP Will Purge the Relevant Data**

The unique intersections of the law and facts–specifically the technology–further weigh in favor of early discovery. First, infringers using BitTorrent are "largely anonymous except insofar as it requires a user to broadcast the user's IP address[.]" *Strike 3 Holdings, LLC v. Doe*, No. 19-04840 (AJN), 2019 WL 3242570, at *3 (S.D.N.Y. July 9, 2019) (citation omitted).

"[O]nly the ISP can match the IP address to the subscriber's identity[.]" *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299 (4th Cir. 2018); *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 774 (8th Cir. 2005) ("Only the ISP . . . can link a particular IP address with an individual's name and physical address."). "In fact, the only realistic means for Strike 3 to learn John Doe's identity is to subpoena . . . the ISP[.]" *Strike 3 Holdings, Inc. v. Doe*, No. 22-11102, 2022 WL 3154673, at *3 (D. Mass. Aug. 8, 2022).

But Congress has granted a qualified privacy right to subscriber information. *See Cable Communications Policy Act of 1984* ("CCPA"), 47 U.S.C. § 551 *et seq.* The CCPA "generally prohibits cable operators from disclosing personally identifiable information regarding subscribers," which may be disclosed "pursuant to a court order and the cable operator provides the subscriber with notice of the order." *Strike 3 Holdings, LLC v. Doe*, No. 22-1821 (LL)(BLM), 2022 WL 17815722, at *1 (S.D. Cal. Dec. 5, 2022) (citations omitted); *Strike 3 Holdings, LLC v. Doe*, No. 22-1352 (TJH)(SP), 2022 WL 18397511, at *2 (C.D. Cal. Nov. 28, 2022) ("A cable operator may disclose a subscriber's personally identifiable information 'pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order.'") (quoting 47 U.S.C. § 551(c)(2)(B)); *see Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019) ("The privacy protections of the Communications Act also do not foreclose a Rule 45 subpoena."). Thus, the ISP is the only entity who can identify the subscriber, and a Court order is the only means for Strike 3 to subpoena the ISP for that information.

This leads to the second element for early discovery: the risk that the ISP purges the relevant data. "The ISP maintains internal logs recording the date, time and customer identify for each IP address assignment[.]" *Malibu Media LLC v. John Does 1-12*, No. 12-1342, 2012 WL 5928528, at *1 (C.D. Ill. Nov. 26, 2012). "These [activity] logs are not publically available." *See*

9

*Tesuco Holdings Ltd. v. Does 1-12*, No. 12-600, 2012 WL 6607894, at *1 (E.D. Tenn. Dec. 18, 2012). Additionally, an ISPs data retention procedure are set by the entity's private policies, and as a result, "ISPs often retain activity logs for only limited periods." *Malibu Media, LLC v. Doe*, No. 14-465, 2014 WL 12586327, at *1 (S.D. Ohio May 20, 2014) (citation omitted). This is an issue because Plaintiff does not know when the ISP began recording the activity logs for a given IP address. Thus, "[t]he period of time that Defendant's particular ISP maintains such logs is unknown. It may be weeks or months." *Malibu Media, LLC v. Doe*, No. 14-372, 2014 WL 5580948, at *2 (S.D. Ohio Oct. 31, 2014).

This creates a serious risk that the data necessary to identify the subscriber will be inadvertently deleted, prejudicing Strike 3's claim. *See id* (holding that "because such records are subject to deletion, this factor also weighs in favor of granting Plaintiff's motion"); *see Killer Joe Nevada, LLC v. Does 1-19*, No. 13-1039, 2013 WL 3458214, at *2 n.22 (N.D. Ohio July 9, 2013) ("Legitimate reasons for expediting discovery do exist however, because ISPs often routinely delete IP address data as a normal part of industry practice.") (citation omitted). Indeed, "[c]ourts have found that due to the anonymous nature of the BitTorrent system of reproducing and transferring copyrighted files, it is unlikely that a plaintiff would be able to determine the identity of a BitTorrent user 'without cross-referencing the date and time of the alleged infringement with information on the ISP's subscriber logs.'" *See In re Various Strike 3 Holdings, LLC Copyright Infringement Cases*, No. 17-6717 (WFK)(CLP), 2018 WL 3404142, at *3 (E.D.N.Y. July 11, 2018) (citation omitted); *see also Strike 3 Holdings, LLC v. Doe*, No. 19-00232 (EMC), 2019 WL 591460, at *3 (N.D. Cal. Feb. 13, 2019).

### C. Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant

"To pursue litigation, plaintiffs in BitTorrent suits must attempt to get early discovery to learn of the actual identities of the unnamed defendants." *See Killer Joe Nevada*, 2013 WL 3458214 at *2 (citation omitted). "[T]here is no practicable means to obtain this information other than through the subpoena Plaintiff requests." *Malibu Media, LLC v. John Does 1-31*, 297 F.R.D. 323, 328 (W.D. Mich. 2012). Consonant with this need, Strike 3's subpoena only requests production of Defendant's name and address. This discovery "is narrowly focused and will allow plaintiff to move the case forward by naming and serving the defendant." *Malibu Media, LLC v. Doe*, 2014 WL 12586327 at *1; *Tesuco Holdings Ltd.* 2012 WL 6607894 at *2 ("Plaintiff has demonstrated that the proposed discovery and/or subpoena seeks information likely to lead to identifying information that will allow the Plaintiff to effectuate service of process on the Doe Defendant[.]").

### D. Early Discovery Is Necessary for the Case to Proceed

Finally, "the identity of the individuals is necessary to move the case forward and without this information, Plaintiff[] would not be able to determine the identities of [the infringer]." *Arista Records, LLC v. Does 1-4*, No. 7-1115, 2007 WL 4178641, at *3 (W.D. Mich. Nov. 20, 2007); *see Strike 3*, 964 F.3d at 1214. The identity of the subscriber is necessary. "Even if the subscriber is not the actual copyright infringer, the subscriber's identity meets the broad scope of discovery in Rule 26 because it is reasonably calculated to lead to the discovery of the actual infringer." *Malibu Media, LLC v. Doe*, No. 15-1342, 2015 WL 6758219, at *1 (N.D. Ohio Nov. 5, 2015) (collecting cases). "At the very least, having John Doe's name and contact information will allow Plaintiff to investigate its copyright claims and determine who exactly should be named as the defendant in this case." *Malibu Media*, 2015 WL 1291458 at *2 (citation omitted).

11

Only the ISP can identify the subscriber, and only an order from the Court can authorize the ISP to produce that information. Thus, this case cannot proceed without early discovery.

      **E.**    **Plaintiff Encourages the Court to Enter a Protective Order**

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See, e.g.*, *Malibu Media LLC v. John Does 1-28*, No. 12-12598, 2012 WL 7748917, at *14 (E.D. Mich. Oct. 31, 2012) ("The Court emphasizes that the recommended protective order is out of an 'abundance of caution' —not because the nature of the case necessarily demands one.") (citation omitted); *Malibu Media*, 2015 WL 1291458 at *2. Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

**V.**    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff leave to take early discovery and issue a subpoena on Defendant's ISP.

/ / /


/ / /

Dated: 07/17/2023

                                          Respectfully submitted,

                                          **RIDGE LAW, LLC**

                                          By: /s/ John C. Ridge
                                          John C. Ridge (0086046)
                                          3136 Kingsdale Center #119
                                          Upper Arlington, Ohio 43221
                                          Telephone: 614-561-7541
                                          Facsimile: 614- 799-2506
                                          E-mail:  jridge@ridge-law.com
                                          *Trial Counsel*